## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

PATRICIA H. MONTGOMERY,

    Plaintiff,

v.                              Civil Action No. 3:06cv024

RUXTON HEALTH CARE, IX, LLC,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the Defendant's Motion to Strike the Affidavits of Patricia Montgomery, Susan Meece, Margaret Ross, and Laura Strong (Docket No. 46). For the reasons set forth below, the Defendant's motion is denied. Accordingly, Plaintiff's Motion for an Enlargement of Time to File Depositions and/or Unsworn Declarations (Docket No. 68) is denied as moot.

**BACKGROUND**

On December 22, 2005, Montgomery, filed a civil action in the Circuit Court of the City of Richmond alleging, among other things, that Ruxton had terminated her employment in violation of the federal Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. On January 11, 2006, Ruxton removed the action to this Court pursuant to 28 U.S.C. § 1441 (Docket No. 1).

On May 12, 2006, Ruxton filed a Motion for Summary Judgment (Docket No. 19), which this Court denied on June 5, 2006 (Docket

No. 30) after considering four affidavits submitted with Ms. Montgomery's Brief in Opposition (Docket No. 21) to Ruxton's summary judgment motion.  (See Aff.'s of Meece and Strong, May 9, 2006; Aff.'s of Montgomery and Ross, May 10, 2006.[1])  Four days later, in a telephone conference on June 9, 2006, Ruxton informed the Court that at least one of the affidavits submitted by Montgomery – the affidavit signed by Susan Meece – was notarized improperly.  (Telephone Conference Tr. 5:6-6:1, June 9, 2006.) Although Meece's affidavit had the seal and signature of a notary, Meece informed Ruxton that no notary public was present when she signed the affidavit, and that no one had ever called to confirm that she actually had signed the affidavit.  (Id.)  Based on Meece's account, Ruxton argued that her affidavit had been notarized improperly and was therefore invalid.  (Id. at 8:3-18.) Montgomery's attorney[2] contended that affidavits could be notarized over the telephone, and that Meece's affidavit was so notarized, but Ruxton disagreed.  (Id. at 6:3-23.)

During the same conference call, Ruxton expressed concerns that the other affidavits submitted by Montgomery might also have

---

[1] The affidavits at issue here will be described as the May 9, 2006 affidavits of Meece and Strong and the May 10, 2006 affidavits of Montgomery and Ross, even though the affidavits were not signed by the affiants on those dates.

[2] Montgomery's counsel has since withdrawn and other counsel has noted an appearance.  References herein to Montgomery's counsel refer to her original counsel, not the current counsel.

been notarized improperly. (Id. at 6:24-25.) According to Ruxton, if none of the affidavits were properly notarized, the Court would have no valid evidence from Montgomery and would have had therefore no basis on which to deny Ruxton's motion for summary judgment. (Id. at 8:14-18.) Given Ruxton's allegations, the Court reopened discovery to determine the manner in which the affidavits were executed. (Id. at 9:19-20.)

On June 12, 2006, three days after the conference call, Montgomery's attorney delivered a letter to Ruxton and to the Court admitting that all four affidavits were defective, having been notarized improperly. (Letter from W. Barry Montgomery to the Court (June 12, 2006).) Subsequent discovery conducted by Ruxton confirmed what Montgomery's attorney had already admitted, and, on June 23, 2006, Ruxton filed the pending motion to strike the affidavits along with a Motion for an Evidentiary Hearing (Docket No. 47). Because the validity of Montgomery's affidavits was in serious doubt, the Court vacated its order denying Ruxton's Motion for Summary Judgment (Docket No. 49) pending further investigation into Montgomery's affidavits.

At the evidentiary hearing on August 30, 2006, Montgomery, Meece, Strong, Ross, and Kelly Potter-Tieng, the notary public,[3] described the manner in which the affidavits were executed.

---

[3] Potter-Tieng is a legal assistant/secretary employed by Montgomery's counsel.

3

Montgomery personally delivered draft affidavits, prepared by her attorney, to the affiants to obtain their signatures. (Evidentiary Hr'g Tr. 10:25-11:2, 13:6, 13:21-14:6, 15:6-17, August 30, 2006.) Montgomery traveled to Meece's home "around the first of May," and had Meece sign her affidavit. (Id. at 11:4.) That same day in early May, Montgomery visited Strong, who also signed her affidavit in her home with Montgomery present. (Id. at 13:21-23, 14:18-19.) On a different day, Montgomery met Ross in a restaurant and had Ross sign her affidavit. (Id. at 15:6-17, 16:7.) Once the signatures were obtained, Montgomery took the affidavits to her attorney's office "the next day." (Id. at 16:16-17:4.) Montgomery's counsel then gave the signed affidavits to Potter-Tieng, to be notarized, even though Potter-Tieng was not present when any of the affidavits were signed. (Id. 38:5-12.) Potter-Tieng "notarized" the affidavits of Meece and Strong on May 9, 2006, and the affidavits of Montgomery and Ross one day later on May 10, 2006. (See Aff.'s of Meece and Strong, May 9, 2006; Aff.'s of Montgomery and Ross, May 10, 2006; Potter-Tieng Dep. 25:6-9, June 16, 2006.) Potter-Tieng did this without any of the affiants present, which, at the time, she believed to be a proper procedure. (Evidentiary Hr'g Tr. 37:5-16, 42:17-23.) May 9, 2006 and May 10, 2006, the dates on which Potter-Tieng notarized the affidavits, are the dates appearing on the affidavits, so the affidavits themselves do not reveal the dates on which they were actually signed by the

4

affiants.  (See Aff.'s of Meece and Strong, May 9, 2006; Aff.'s of Montgomery and Ross, May 10, 2006.)

At the end of the evidentiary hearing, Ruxton argued, as it had all along, that the affidavits were legally invalid because they were signed outside the presence of a notary, and that the affidavits therefore could not be used to oppose Ruxton's Motion for Summary Judgment.  (Evidentiary Hr'g Tr. 48:12-16.)  Without the affidavits, Ruxton argued, the Court must dismiss this action or grant Ruxton's summary judgment motion.  (Id.)  Montgomery opposed dismissal or summary judgment for Ruxton, but essentially conceded the invalidity of the four affidavits.  (See id. at 70:16-23.)

On September 11, 2006, after taking the matter under advisement, the Court ordered additional briefing from the parties concerning the effect of 28 U.S.C. § 1746 on Ruxton's Motion to Strike (Docket No. 60).  Section 1746, which was not cited during or at any time before the evidentiary hearing, allows federal courts to consider "affidavits" that have not been notarized so long as they meet other statutory requirements, as discussed below.

## DISCUSSION

An affidavit is a written statement of facts, "confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." Black's Law Dictionary 58 (6th ed. 1990).  However, unsworn

5

declarations captioned as "affidavits" may be considered for purposes of summary judgment so long as they satisfy the requirements of 28 U.S.C. § 1746 (1976). See Peters v. Lincoln Electric Co., 285 F.3d 456, 475 (6th Cir. 2002); Willard v. Internal Revenue Serv., 776 F.2d 100, 102 n.3 (4th Cir. 1985); Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985). Section 1746 provides:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same ... such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> ...
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

28 U.S.C. § 1746. Section 1746 does not require an affidavit to be notarized at all so long as the affidavit otherwise complies with the statute. Where the requirements of § 1746 are met, "a district court should not be unnecessarily hyper-technical and overly harsh"

on a party who has otherwise failed to meet the technical requirements for executing affidavits. Pfeil, 757 F.2d 859.

Here, Ruxton contends that the affidavits submitted by Montgomery, which were each signed under penalty of perjury, fail to satisfy § 1746 because of two defects in their execution: first, none of the affidavits state that their contents are "true and correct;" second, each is undated. The Fourth Circuit has not had occasion to address in detail the proper application of § 1746, but federal courts generally interpret § 1746 liberally given the statute's explicit call for only substantial compliance with most of its terms. Based on the relevant decisional law from other jurisdictions, the Court concludes that neither defect cited by Ruxton is fatal to the affidavits here at issue.

First, an unsworn declaration is not invalid under § 1746 simply because it lacks the words "true and correct." LeBoeuf, Lamb, Green & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65-66 (2nd Cir. 1999). The four affidavits at issue here do not state that their contents are "true and correct," but they are each signed under penalty of perjury and therefore substantially comply with the form language set forth in the statute. Moreover, when a person swears to a statement under penalty of perjury, it is reasonable to infer that she believes the contents to be true and correct.

Second, undated declarations are acceptable under § 1746 when extrinsic evidence demonstrates the approximate date or "the period" in which the declarations were executed. Peters, 285 F.3d at 475-76; see also Pieszak v. Glendale Adventist Med. Ctr., 112 F. Supp. 2d 970, 999 (C.D. Cal. 2000) (finding § 1746 satisfied where extrinsic evidence indicated the month in which the document was signed); E.E.O.C. v. World's Finest Chocolate, Inc., 701 F. Supp. 637, 639 (N.D. Ill. 1988) (finding § 1746 satisfied where extrinsic evidence indicated the twelve-day period in which the document was signed). Because § 1746 was not addressed by the parties until after the evidentiary hearing, the record here was not developed with the statute's date requirement in mind; nevertheless, the available evidence indicates that the four affidavits were each signed in the same general time period: early May 2006.

First, the record shows that Montgomery undertook to have all the affidavits signed as part of a single enterprise at approximately the same time in May 2006. Consider, for example, the following exchange between Ruxton's counsel and Montgomery during a deposition respecting the execution of these affidavits:

> Q: Now, did you take it upon yourself to go out to these individuals when these were signed in May and sit with them and ask them to sign them, or was that something --
>
> A: I did. I called them and – because we got them fairly late, and it was late in the afternoon, they're all nurses and they work all kinds of different shifts, and they're very busy people. And I just told them I would come out at their

8

>       convenience. So I did. I when [sic] to – and each
>       one of them just happened to be late in the
>       afternoon.

(Montgomery Dep. 8:24-9:10, June 16, 2006.) Montgomery's affirmative response to the question indicates that she set out to have all of the affidavits signed during the same general time period – "in May" – rather than piecemeal over the course of many weeks or months.

The time frame is narrowed still further by the fact that Montgomery delivered the signed affidavits to her attorney "the next day" after having them signed. (Evidentiary Hr'g Tr. 16:16-17:4.) Given that Potter-Tieng notarized the signed affidavits of Meece and Strong on May 9, 2006, neither of those affidavits could have been executed after May 8, 2006. (See Potter-Tieng Dep. 21:1, 25:8-9, June 16, 2006.) Similarly, because Potter-Tieng notarized the signed affidavits of Montgomery and Ross on May 10, 2006, neither of those affidavits could have been executed after May 9, 2006. (See id.) Therefore, the record shows that all four affidavits were executed no later than May 9, 2006.

The record also demonstrates that the affidavits were not executed before early May. For example, Montgomery testified that she went to Meece's house "around the first of May" to have Meece sign her affidavit, and that she visited Strong on that same day. (Evidentiary Hr'g Tr. at 11:4, 14:18-19.) Meece also remembers signing her affidavit in "early May." (Meece Aff. 1, June 8,

2006.) Therefore, the affidavits of Meece and Strong were executed on the same day sometime between May 1 and May 8, 2006.

In addition, it is significant that the Meece and Strong affidavits were notarized one day before the Montgomery and Ross affidavits. Because Montgomery delivered signed affidavits to her attorney's office "the next day" after having them signed, the staggered dates of notarization indicate that Montgomery and Ross signed their affidavits at least one day *after* Meece and Strong signed theirs, and testimony clearly indicates that Meece and Strong signed their affidavits in early May.

Additional evidence confirms the conclusion that Montgomery and Ross, like Meece and Strong, executed their affidavits in early May. When Montgomery was asked during the evidentiary hearing if she signed her affidavit "the same night that [she] had [the] other three witnesses sign theirs," she said she was "pretty sure" she had, even though she was "not sure when [she] signed it" and previously could not "recall the date" on which she signed it. (Evidentiary Hr'g Tr. 9:3, 16:25-17:1.) While the premise of the question was wrong (deposition testimony indicates that Ross signed her affidavit on a different day than Meece and Strong), Montgomery's answer indicates that all four affidavits, including her own, were signed at approximately the same time. (See Montgomery Dep. 23:15-22, June 16, 2006.) If all four affidavits

10

were signed at approximately the same time, they were each signed in early May.

All indications are that Ross signed her affidavit in early May, as well. In fact, Montgomery's confusion in the evidentiary hearing exchange described above, in which she failed to correct Ruxton's attorney when asked if she signed her affidavit on the same day the "other three witnesses sign[ed] theirs," seems less evidence of Montgomery's poor memory than it is evidence that Ross signed her affidavit in early May along with everyone else. In fact, when Montgomery was asked during a deposition if Meece, Strong, and Ross signed their affidavits on the same day, Montgomery said first that she was "not sure" before finally deciding that the three affidavits were not all signed on the same day. (Id.) Had Ross signed her affidavit weeks before Meece and Strong, Montgomery would not have had trouble remembering whether all three women had signed on the same day. Moreover, even though Ross could not "really remember" what day she signed her affidavit, when asked during a deposition if she could recall the date on which she signed her affidavit, she erroneously assumed she had signed it on May 10, 2006 (the date on which it was improperly notarized), which indicates that May 10 is at least reasonably close to the actual date of execution. (Ross Dep. 12:21-13:6, August 2, 2006.) No evidence to the contrary exists.

In sum, the evidence, taken as a whole, points convincingly to early May 2006 as the period in which all four affidavits were executed. Nothing in the record contradicts that conclusion. This approximate time period is enough to satisfy the date requirement imposed by § 1746.[4]

Indeed, the most critical requirement of § 1746 is that the affiant sign her name under penalty of perjury. World's Finest Chocolate, 701 F. Supp. at 639. The date on which an unsworn declaration is signed is important primarily because the date could be critical to a perjury prosecution. Id. Based on the record here, the Court is confident that any of these women may be effectively prosecuted for perjury if they knowingly made material false statements in their affidavits. Ruxton makes no argument to the contrary.[5]

---

[4] Ruxton cites several cases for the proposition that an exact date, rather than an approximate date, is required by § 1746. However, in only one of those cases did a court actually strike affidavits based on the fact that they were undated. In Bonds v. Cox, 20 F.3d 697, 702 (6th Cir. 1994), the Sixth Circuit declined to consider undated affidavits because they were "technically deficient" under § 1746. However, eight years later, in Peters v. Lincoln Electric Co., 285 F.3d 456, 475 (6th Cir. 2002), the Sixth Circuit reversed course and joined other courts in accepting undated affidavits under § 1746 when extrinsic evidence indicates the approximate date of their execution.

[5] In a previous motion to strike, Ruxton argued that the May 9, 2006 affidavit of Strong and the May 10, 2006 affidavits of Montgomery and Ross each contained statements that were in contradiction to other deposition testimony or affidavits. (See Def.'s Mem. in Support of Def's Motion to Strike the Affidavits (Docket No. 24).) Montgomery's allegedly contradictory testimony occurred in a deposition taken on April 11, 2006, weeks prior to

Moreover, the Court would not hesitate to strike the affidavits if it doubted their veracity or had any inkling that they were "fraudulently submitted," as Ruxton contends they were. (Def.'s Mem. of Law as to the Effect of 28 U.S.C. § 1746 on Def.'s Mot. to Strike 1.) Each of the women who signed affidavits read the affidavits before signing them and none expressed disagreement with the contents of those affidavits. (See Evidentiary Hr'g Tr. 9:8-9, 28:8-17, 34:15-22; Meece Dep. 15:19-17:3, June 16, 2006.) To be sure, Montgomery's counsel failed to exercise even a modicum of care in having the affidavits executed, but nothing in the record suggests that it was his intention to commit fraud.

## CONCLUSION

The affidavits submitted by Montgomery in opposition to Ruxton's Motion for Summary judgment are imperfect, but, because they are signed under penalty of perjury, and because the Court can ascertain the approximate date of their execution, they are legally sufficient under 28 U.S.C. § 1746. Accordingly, Ruxton's Motion to

---

the execution of the affidavits at issue here. (Id. at 2.) Strong allegedly gave a somewhat contradictory statement in an affidavit dated April 27, 2006, at least a few days before Strong could have executed her May 9, 2006 affidavit in early May. (Id. at 3.) Finally, Ross allegedly gave contradictory deposition testimony on May 12, 2006, at least three days after she could possibly have signed her May 10, 2006 affidavit. (Id. at 2.) In other words, the general time frame in which the affidavits at issue here were executed – early May – is sufficiently precise to distinguish the statements made in those affidavits from other statements previously or subsequently made by the affiants.

Strike the Affidavits (Docket No. 46) is hereby DENIED. As a result, Ruxton is not entitled to attorneys' fees incurred in relation to its Motion to Strike. Montgomery's Motion for an Enlargement of Time to File Depositions and/or Unsworn Declarations (Docket No. 68) is DENIED as moot.

    The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

    It is so ORDERED.

                                                     /s/
                                                 Robert E. Payne
                                                 United States District Judge

Richmond, Virginia
Date: December 14, 2006