**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

PATRICIA H. MONTGOMERY,

    Plaintiff,

v.                                            Civil Action No. 3:06cv024

RUXTON HEALTH CARE, IX, LLC,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's Motion for Costs (Docket No. 86) and the objections thereto filed by the plaintiff (Docket No. 88). The prevailing defendant, Ruxton Health Care, IX, LLC ("Ruxton"), seeks $2,748.70 in costs pursuant to Fed. R. Civ. P. 54(d) and Local Civil Rule 54. (See Mem. in Supp. of Def. Ruxton Health Care IX, LLC's Mot. for Costs ("Def.'s Mem.") Ex. A.) The plaintiff, Montgomery, objects to $1,459.10 of those costs, arguing that they were not reasonably necessary at the time they were incurred. (See Pl.'s Objection to Def.'s Bill of Costs ("Pl.'s Mem.") at 2-3.) For the following reasons, Ruxton's motion is granted in part and denied in part.

**DISCUSSION**

Rule 54(d) authorizes the award of costs to a prevailing party "as of course," thereby "creat[ing] the presumption that costs are to be awarded to the prevailing party." Cherry v. Champion Int'l

Corp., 186 F.3d 442, 446 (4th Cir. 1999). A district court "must justify its decision [to deny costs] by 'articulating some good reason for doing so.'" Teaque v. Bakker, 35 F.3d 978, 996 (quoting Oak Hall cap and Gown Co. v. Old Dominion Freight Line, Inc., 899 F.2d 291, 296 (4th Cir. 1990). Indeed, "[c]osts may be denied to the prevailing party only when there would be an element of injustice in a presumptive cost award." Cherry, 186 F.3d at 446.

Montgomery's objection to Ruxton's Motion for Costs relates to the costs associated with Ruxton's Motion to Strike the Affidavits of Patricia Montgomery, Susan Meece, Margaret Ross, and Laura Strong (Docket No. 46). To resolve Montgomery's objection, a brief review of the relevant facts is in order. During a telephone conference on June 9, 2006, Ruxton indicated that at least one of Montgomery's affidavits was not signed in the presence of a notary public even though the affidavit bore the seal and signature of a notary. (See Conference Call Tr. at 5, June 9, 2006.) Ruxton was suspicious that three other affidavits were similarly deficient. (Id. at 8.) Ruxton contended that the affidavits were legally invalid and should not have been used by Montgomery to defeat Ruxton's motion for summary judgment, which had been denied by the Court just days before. (See id. at 9.) Given the seriousness of Ruxton's allegations, the Court reopened discovery to allow Ruxton to depose the affiants. (Id.)

Two days after the conference call, Montgomery's counsel advised the Court and counsel for Ruxton that all four affidavits submitted by Montgomery were improperly notarized.[1] (See Letter from W. Barry Montgomery to the Court at 1-2 (June 12, 2006).) In that letter, Montgomery's counsel asked the Court for an opportunity to obtain properly notarized affidavits or to depose the affiants. (Id. at 2.) The affiants were subsequently deposed and an evidentiary hearing was held on August 30, 2006.

After considering the improperly notarized affidavits and all of the evidence obtained from the depositions and the evidentiary hearing, the Court held that the affidavits, although improperly notarized, were legally sufficient under 28 U.S.C. § 1746. (See Docket No. 73.) Perhaps more importantly, the Court did not find any fraud or deceit on the part of Montgomery's counsel in submitting the improperly notarized affidavits. (See id.) The Court allowed Ruxton to submit a renewed motion for summary judgment, and granted that motion in a memorandum opinion and order dated April 26, 2007 (Docket Nos. 84 and 85).

Montgomery now opposes Ruxton's Motion for Costs insofar as it relates to the depositions and other expenses associated with Montgomery's improperly notarized affidavits. Specifically, Montgomery contends that, because the Motion to Strike was denied

---

[1] Montgomery has since obtained new counsel. (See Docket Nos. 66 and 69.)

3

and because Montgomery's previous counsel admitted his mistakes on June 12, 2006, certain costs were not "reasonably necessary" at the time they were incurred. (Pl.'s Mem. at 2 (citing LaVay v. Dominion Fed. Sav. & Loan Ass'n, 830 F.2d 522, 528 (4th Cir. 1987)).) The costs to which objection is taken are:

- Transcript of Conference Call
  (June 9, 2006)     $ 52.80

- Transcript of Evidentiary Hearing
  (August 30, 2006)     267.30

- Witness Fees     320.00

- Court Reporter Fees and Deposition
  Transcripts     819.00

(Id. at 2-3.)

Montgomery's objections are not entirely well-founded. Although the Court ultimately found the affidavits to be legally sufficient, and although Montgomery's previous counsel admitted certain errors on June 12, 2006, the depositions, evidentiary hearing, and some of the related expenses were necessary to clarify the record, to ensure that proper evidence was before the Court, and to ensure that the judicial process had not been undermined by fraudulently obtained and submitted affidavits. The carelessness exhibited by Montgomery's previous counsel precipitated those expenditures, and Montgomery may not avoid paying for them now. Accordingly, all deposition costs and the witness fees for the evidentiary hearing must be paid by Montgomery.

4

However, at the evidentiary hearing it became obvious that the facts surrounding the signing of the contested affidavits were such that the affidavits were acceptable as statements under 28 U.S.C. § 1746. Neither counsel recognized this fact. Both sides, therefore, bear responsibility for needlessly prolonging the conflict. Thus, under the circumstances, it is not appropriate to assess against Montgomery the cost ($267.30) for the transcript of the evidentiary hearing. Nor is it appropriate to assess against her the cost of the telephone conference transcript ($52.80).

Montgomery also objects to a $40.00 witness fee paid by Ruxton to Matthew Farmer pursuant to 28 U.S.C. § 1821. (Pl.'s Mem. at 3.) Under § 1821, "a witness in attendance at any court of the United States . . . or before any person authorized to take his deposition . . . shall be paid [certain fees]." 28 U.S.C. § 1821. Accordingly, Ruxton paid $40.00 per day to Matthew Farmer and to each of the people it deposed. (See Def.'s Mem. Ex. B.) It is unclear why Farmer was paid, however, because Farmer never appeared for a deposition, hearing, or, obviously, for trial. Ruxton explains that it sent checks to witnesses who were expected to testify at trial and that Farmer was the only witness who "actually cashed his check," but that explanation does not justify requiring Montgomery to pay a witness fee for someone who was never "in attendance at any court of the United States" or "before any person authorized to take his deposition." (See Reply to Pl.'s Objection

to Def.'s Bill of Costs ("Def.'s Reply") at 2 n.2.)  If Ruxton wants to be reimbursed for its $40.00 it should look to Farmer, not to Montgomery.

In sum, Montgomery's objections respecting Matthew Farmer's witness fee, the transcript of the evidentiary hearing, and the transcript of the June 9, 2006 conference call are each well-taken. It is therefore ORDERED that Ruxton is awarded costs in the amount of $2,388.60.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

_____/s/_____<br>
Robert E. Payne<br>
Senior United States District Judge

Date: June 22, 2007
Richmond, Virginia